UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TYREL E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00308-MJD-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Tyrel E. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in March 2018, alleging an onset of disability as of March 1, 2018. [Dkt. 17-7 at 2.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge James E. MacDonald

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

("ALJ") on October 7, 2019. [Dkt. 17-2 at 51-78.] On December 20, 2019, ALJ MacDonald issued his determination that Claimant was not disabled. [Dkt. 17-2 at 28.] The Appeals Council then denied Claimant's request for review on December 8, 2020. [Dkt. 17-2 at 2.] On February 4, 2021, Claimant timely filed his Complaint in this Court seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ MacDonald first determined that Claimant had not engaged in substantial gainful activity since his alleged onset date of March 1, 2018. [Dkt. 17-2 at 33.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative joint disease of the right shoulder, degenerative disc disease of the cervical, thoracic and lumbar spine, COPD/emphysema, obstructive sleep apnea, hernias, peripheral arterial disease, hypertension, coronary artery disease with hyperlipidemia, headaches, obesity, depression, anxiety, obsessive compulsive disorder (OCD) and post-traumatic stress disorder (PTSD)." [Dkt. 17-2 at 34.] The ALJ determined that Claimant's GERD was non-severe. [Dkt. 17-2 at 34.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during

the relevant time period. [Dkt. 17-2 at 34.] ALJ MacDonald then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. Specifically, the claimant is able to lift, carry, pull and pull[3] 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and stand and/or walk 6 hours in an 8-hour workday[4] and sit 6 hour [sic] in an 8-hour workday. He is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ladders, ropes or scaffolds or crawl,[5] but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, and crouch. He is never to be exposed to humidity, but is occasionally able to be exposed to dusts, fumes, odors, gases and poorly ventilated areas. The claimant is able to perform occasional overhead reaching with the right upper extremity and is frequently able to reach in all other directions with the right upper extremities. He is never to be exposed to unprotected heights or moving mechanical parts. Mentally, the claimant is able to understand and remember simple instructions and carry out simple tasks with simple work-related decisions and judgment performing these tasks with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks. He is able to tolerate occasional interaction with supervisors and coworkers with no interactions with the general public as part of the job duties. He is never to perform tandem tasks with no hourly quotas, but is able to meet daily expectations. Last, the claimant is limited to moderate noise environments, as defined in the SCO [Selected Characteristics of Occupations].

[Dkt. 17-2 at 37] (footnotes added).

At step four, ALJ MacDonald found that Claimant was unable to perform any of his past relevant work during the relevant time period. [Dkt. 17-2 at 43.] At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as weight recorder (DOT 222.387-074), photocopy machine operator (DOT 207.685-014), and office helper (DOT

---

[3] The Court assumes the ALJ meant to say "push and pull," not "pull and pull."
[4] Recognizing the repeated limitation of "stand and/or walk 6 hours in an 8-hour workday," the Court is unsure whether "stand and or/walk" was intended to be a different limitation or whether the repeated portion of the sentence should have been omitted altogether.
[5] The Court is unable to discern what this contradictory statement means. Either Claimant was *never* to climb ladders, ropes, or scaffolds, or he was *occasionally* able to do so. Given this confusion, it is also not certain whether Claimant was limited to crawling occasionally or never.

239.567-010). [Dkt. 17-2 at 44.] Accordingly, ALJ MacDonald concluded that Claimant was not disabled. [Dkt. 17-2 at 45.]

## IV. Discussion

Claimant advances myriad arguments in support of his request to reverse the decision of the ALJ, most of which pertain to a flawed RFC determination and the absence of a logical bridge. [Dkt. 22.] The Commissioner responds that the ALJ based his decision on substantial evidence and therefore reversal is inappropriate. [Dkt. 25.] Ultimately, the Court agrees with Claimant that ALJ MacDonald's decision is deficient in many respects, with the most compelling reasons discussed below.[6]

### A. The ALJ's RFC Determination Did Not Account for Claimant's "Severe" Headaches

The Court begins with Claimant's argument that the ALJ's RFC determination erroneously omitted limitations regarding his severe headaches and that the ALJ provides no reason for doing so. [Dkt. 22 at 21.] It is well understood that, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." SSR 96-8p; *see Crump*, 932 F.3d at 570 (The ALJ

---

[6] Before turning to Claimant's more persuasive arguments, the Court notes that Claimant also sets forth errors at step five, alleging that the ALJ erroneously relied on VE testimony which departed from the DOT. Claimant highlights that the ALJ found he was limited in his reaching capabilities, yet argues that "[i]t is undisputed that two of the identified jobs, *i.e.*, photocopy machine operator and office helper, each requires frequent reaching." [Dkt. 22 at 29] (citing DOT). However, neither DOT job description, either explicitly or implicitly, mentions anything about frequent reaching. The Court is therefore confused as to Claimant's "undisputed" claim. In any case, because the Court finds numerous other issues with the ALJ's decision that require reversal, it need not address Claimant's unconvincing VE-related arguments further. That said, the Court does wonder whether the vocations of "weight recorder" and "photocopy machine operator" still exist in today's national economy, let alone in significant numbers.

must assess the claimant's RFC by "incorporat[ing] all of the claimant's limitations supported by the medical record.").

Here, ALJ MacDonald found that Claimant was severely impaired by his "degenerative joint disease of the right shoulder, degenerative disc disease of the cervical, thoracic and lumbar spine, COPD/emphysema, obstructive sleep apnea, hernias, peripheral arterial disease, hypertension, coronary artery disease with hyperlipidemia, **headaches**, obesity, depression,[7] anxiety,[8] obsessive compulsive disorder (OCD) and post-traumatic stress disorder (PTSD)." [Dkt. 17-2 at 34] (emphasis and footnote added).[9] However, Claimant is correct that there is no

---

[7] It is important to recognize that Claimant does not just suffer from "depression," but rather, has consistently been diagnosed with "major depressive disorder, recurrent, severe with psychotic symptoms." *See*, *e.g.*, [Dkt. 17-9 at 341, 641]. It appears that the ALJ mischaracterized Claimant's major depressive disorder, recurrent, severe with psychotic symptoms as simply "depression," but "as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)*; *see Moon v. Colvin, 763 F.3d 718, 722 (7th Cir. 2014)* ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *see also Constance L. v. Kijakazi, 2022 WL 950071, at *3 (S.D. Ind. Mar. 30, 2022)* (reversing ALJ, in part, for mischaracterizing the claimant's "major depressive disorder, recurrent, severe with psychotic symptoms" as "depression" at step two).

[8] The Court is unable to locate in the record where Claimant's treating sources diagnosed him with an anxiety disorder. They do, however, consistently diagnose him with "persistent mood disorder, unspecified." *See*, *e.g.*, [Dkt. 17-9 at 349, 351, 529]. If the ALJ substituted Claimant's persistent mood disorder, unspecified, with "anxiety," then this finding is problematic for the same reasons explained in note 7 above.

[9] The Court additionally notes that ALJ MacDonald failed to consider Claimant's "panic disorder" as an impairment—a diagnosis appearing at least 16 times in the record since Claimant's alleged onset date with ample supporting documentation and testimony. *See*, *e.g.*, [Dkt. 17-9 at 349, 351, 529]; [Dkt. 17-2 at 68-69] (Claimant's testimony that, when he is experiencing a panic attack, "[i]t almost makes you feel like you're dying"; "if I'm in a room, I've got to get out of it quick. It feels like it's coming in"; "[y]ou start racing in your mind, your heart. You get all panicky and sweaty and everything and stuff, and then it just becomes a feeling like you're going to die"; "I run out and I start taking slow breaths, try to take slow breaths"); [Dkt. 17-9 at 607] (psychotherapy treatment note from January 10, 2019, stating "Client reported increased and intense panic attacks during which he has to go outside in cold for several hours and felt the house was 'melting.'"). The ALJ made no findings as to whether Claimant's panic disorder constituted a severe or non-severe impairment, alone or combined. *See Ridinger v.*

explanation in ALJ MacDonald's decision about how his RFC determination accounts for those headaches. In fact, the following passage is the ALJ's sole mention of Claimant's headaches in his decision—again, despite having found them to constitute a severe impairment: "In a headache questionnaire, the claimant has two headaches per week that last between 4-9 hours at a time. When having a headache, he is only able to do the essentials of his daily living. (Exh. B9E)." [Dkt. 17-2 at 38.] To be sure, Claimant also reported that his headaches come with sensitivity to light and sound, and that he treats his headaches with medication and rest, although the medications do not provide relief. [Dkt. 17-8 at 60.] As Claimant argues, ALJ MacDonald "fail[ed] to account for the most significant limitations arising from [Claimant's] headaches, *i.e.*, the need to absent himself from the work setting when they occur." [Dkt. 22 at 21.]

      The Commissioner asserts that any error here is harmless. [Dkt. 25 at 16.] The Court disagrees. Indeed, this evidence suggests that Claimant may be off-task for up to 18 hours in a week due to his headaches, which would be work preclusive per the VE, *see* [Dkt. 17-2 at 77]. Yet, the ALJ did not appear to consider this or, if he did, failed to provide any explanation of such. See *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (remand necessary where reviewing court could not tell whether the ALJ addressed evidence that the claimant could not stay on task for at least 90% of the workday). Ultimately, the ALJ's RFC determination is flawed because it does not account for Claimant's severe headache impairment or, at the very least, articulate why that severe impairment did not warrant any limitations. Because the ALJ provides

---

*Astrue*, 589 F. Supp. 2d 995, 1004 (N.D. Ill. 2008) ("Even impairments that are not severe on their own must be considered because the combination of impairments may be severe.") (citing 20 CFR § 404.1523). To be sure, the ALJ mentioned Claimant's panic disorder a few times when summarizing the evidence, but not once in his step two determination. The ALJ on remand shall be sure to consider **all** of Claimant's impairments that are supported by the record, which includes his panic disorder.

no explanation for this omission that would allow the Court to follow his reasoning, the requisite logical bridge is lacking and thus remand is necessary.

### B. The ALJ Did Not Adequately Consider the Medical Opinions of Record

Claimant additionally argues that ALJ MacDonald inadequately considered the State agency opinions and failed to incorporate the limitations set forth therein. *See* 20 CFR § 404.1513a(b)(1) (ALJs "are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal and State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

State agency medical professionals reviewed Claimant's file in September 2018 and November 2018. The State agency doctors, J. Sands, MD, and B. Whitley, MD, found that Claimant's statements about the intensity, persistence, and functionally limiting effects of his pain, sustained concentration and persistence limitations, and social interaction limitations, were "substantiated by the objective medical evidence alone." [Dkt. 17-5 at 12, 46.] They determined that Claimant had exertional, postural, and environmental limitations. [Dkt. 17-5 at 12-13, 46-47.] Regarding environmental limitations, Dr. Sands and Dr. Whitley reported that Claimant must "avoid concentrated exposure" to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other "factors that would exacerbate COPD." [Dkt. 17-5 at 13-14, 47-48.][10]

The ALJ found the opinions of Dr. Sands and Dr. Whitley "persuasive," and noted that "[e]nvironmental limitations are warranted because of his respiratory impairments." [Dkt. 17-2 at

---

[10] The Social Security Administration recognizes that an "inability to tolerate very little dust" and other environmental limitations "significantly impinges on all ranges of work since very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." POMS DI 25020.015(C).

8

41.] However, in formulating his RFC, ALJ MacDonald determined that Claimant "is never to be exposed to humidity, but is **occasionally able to be exposed to dusts, fumes, odors, gases and poorly ventilated areas**." [Dkt. 17-2 at 37] (emphasis added). This seemingly contradicts the environmental limitations opined by Dr. Sands and Dr. Whitley, and belies the significant medical evidence in support of Claimant's severe COPD and emphysema. Further, Claimant testified that he is "highly allergic to dust," which contributes to his COPD and emphysema. [Dkt. 17-2 at 67.] The ALJ does not explain why he deviated from the State agency physicians' "persuasive" opinions in finding that Claimant could occasionally be exposed to COPD-exacerbating factors, and thus the Court is unable to follow his reasoning.

Next, State agency psychologists, Kari Kennedy, Psy.D., and Joelle Larsen, Ph.D., found that Claimant had "mild" limitations in his ability to understand, remember, or apply information and adapt or manage oneself, and "moderate" limitations in his ability to interact with others and concentrate, persist, or maintain pace. [Dkt. 17-5 at 11, 45.] Specifically, they determined that Claimant was moderately limited in his ability to (1) maintain attention and concentration for extended periods, (2) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (3) interact appropriately with the general public. [Dkt. 17-5 at 14-15, 49.] Dr. Kennedy and Dr. Larsen then opined that

> [t]he totality of the evidence in file suggests that the claimant is able to: remain alert and pay close attention to watching machine processes; able to inspect, test or otherwise look for irregularities; able to tend or guard equipment or property, material or persons against loss or damage. [Claimant] may prefer to work in a position that requires minimal interaction with others. [Claimant] appears capable of semiskilled work.

[Dkt. 17-5 at 16, 50.]

ALJ MacDonald found the opinions of Dr. Kennedy and Dr. Larsen "not persuasive" for the sole reason that "the claimant has had memory issues warranting a finding that the claimant is limited to simple tasks." [Dkt. 17-2 at 42.] In his RFC determination, the ALJ stated that,

> [m]entally, the claimant is able to understand and remember simple instructions and carry out simple tasks with simple work-related decisions and judgment performing these tasks with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks. He is able to tolerate occasional interaction with supervisors and coworkers with no interactions with the general public as part of the job duties. He is never to perform tandem tasks with no hourly quotas, but is able to meet daily expectations.

[Dkt. 17-2 at 37.] Critically, the ALJ does not explain what led to his finding that Claimant could perform simple tasks "with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks," especially after the State agency psychologists determined that Claimant was moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Additionally, ALJ MacDonald's inexplicable finding regarding this two-hour interval figure is not based on substantial evidence, since none of Claimant's medical records, nor the State agency psychologists, offered this opinion. *See Goodman v. Saul*, 2020 WL 3619938, at *8 (N.D. In. June 10, 2020) (remanding where the ALJ's determination that the claimant could maintain attention and concentration for two-hour intervals was unsupported by the record); *see also Warren v. Colvin*, 2013 WL 1196603, at *4-5 (N.D. Ill. Mar. 22, 2013) (same; noting that the ALJ "formulated her own independent medical opinion regarding the effects (or lack of effects) of [the claimant's] moderate difficulties of concentration, persistence, or pace"). Indeed, since the ALJ rejected Dr. Kennedy's and Dr. Larsen's opinions, it is unclear what the mental limitations he provided are based on. *See Clifford*

*v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."). Moreover, these are the only expert opinions in the record concerning Claimant's mental limitations.[11] By rejecting Dr. Kennedy's and Dr. Larsen's opinions and without relying on any other expert opinions, ALJ MacDonald's decision lacks any insight into how he formulated Claimant's mental limitations.

Further, as Claimant underscores, a determination that Claimant could "sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday" essentially amounts to no limitation at all. [Dkt. 22 at 14.] Indeed, the mental abilities required for any job include "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." POMS DI 25020.010(B)(2). It therefore does not make sense that Claimant, who has moderate limitations in his ability to maintain attention and concentration, "would require the same frequency of breaks as a typical worker." *Warren*, 2013 WL 1196603, at *4-5; *see also Brian P. v. Saul*, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into a finding that [the claimant] can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals."); *see also Kelly v. Colvin*, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("[T]he RFC assessment is still fatally

---

[11] At the request of the State agency doctors, consultative examiner Luella Bangura, MD, met with Claimant on June 14, 2018, and completed a report. [Dkt. 17-9 at 418-422.] Although the ALJ summarizes Dr. Bangura's examination, *see* [Dkt. 17-2 at 39], he does not explicitly consider her opinion nor articulate its persuasiveness. *See* 20 CFR § 404.1520c (ALJs are required to articulate how persuasive they find each of the medical opinions and prior administrative medical findings in a claimant's record); *see also* 20 CFR § 404.1520(a)(3) ("We will consider all evidence in your case record.").

flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time."). These errors require remand.

### C. The ALJ Improperly Rejected Claimant's Subjective Symptoms

Finally, Claimant argues that the ALJ failed to offer an explanation for discrediting Claimant's subjective symptoms. [Dkt. 22 at 25.] After determining that a claimant's medically determinable impairment(s) could reasonably be expected to produce the alleged symptoms, the ALJ must then evaluate how the intensity and persistence of a claimant's symptoms may affect their capacity for work. 20 CFR § 404.1529(c)(1). An ALJ's credibility determinations are generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, at 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick*, 775 F.3d at 937).

Here, ALJ MacDonald regurgitated the following boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 17-2 at 38-39.] The ALJ then summarizes the medical evidence, but, critically, summary does not equate to analysis. *See Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) ("A summary is not an analysis, as it does not explain **why** the evidence summarized

undermined [Claimant's] statements about [her] symptoms or limitations, or which statements were inconsistent.") (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). Indeed, the ALJ does not point to the inconsistencies he claims exist between Claimant's subjective statements and the medical evidence, and the Court is unable to locate any after reviewing the entire record. Moreover, the ALJ's statement again contradicts the "persuasive" opinions of the State agency physicians, who found that Claimant's statements about the intensity, persistence, and functionally limiting effects of his pain, sustained concentration and persistence limitations, and social interaction limitations, were "substantiated by the objective medical evidence alone." [Dkt. 17-5 at 12, 46.] The ALJ again provides no articulation as to why he deviated from these findings.

The only "analysis" as to why ALJ MacDonald discredits Claimant's statements is as follows:

> A more restrictive residual functional capacity is not warranted because the claimant was looking for work. House projects were keeping him busy, which is evidence that he is not as limited as he claims. His ability to perform house projects and his plan on looking for work is evidence that he is capable of performing light exertional work with the postural, manipulative and environmental limitations.

[Dkt. 17-2 at 41.] This reasoning is a factually inaccurate mischaracterization of the record, and thus provides insufficient grounds to reject Claimant's statements.[12]

---

[12] In fact, the ALJ mischaracterizes the record multiple times. Consider the following examples: the ALJ stated that "[t]he claimant also enjoy [sic] working on automobiles." [Dkt. 17-2 at 38.] In reality, Claimant merely reported that his hobbies and interests included "automobiles," [Dkt. 17-8 at 25], which does not necessarily mean he would work on them. This mischaracterization, while seemingly inconsequential, implies a level of physical exertion that may have weighed in the ALJ's mind when denying Claimant benefits. Another example: the ALJ stated that Claimant "spent most of the time with his friends or tasks he enjoyed doing." [Dkt. 17-2 at 41.] However, the treatment note cited to actually provides that, in discussing Claimant's relationship issues, "[h]e agrees to spend time with friends or tasks he enjoys but states he feels ill anticipating returning to home." [Dkt. 17-9 at 589.] Again, this mischaracterization implies a level of

Regarding Claimant performing "house projects," the ALJ cites to two psychotherapy treatment notes, stating that "[h]ouse projects were keeping him busy and he felt useful since he was not working. (Exh. B6F/57)" and "[h]e planned on doing more house projects when he was physically [sic] and feeling productive. (Exh. B13F/7)." [Dkt. 17-2 at 40.] However, there is no mention, in the ALJ's decision or the record itself, about what such projects entailed. Surely, "house projects" could range from dusting a shelf, to organizing a laundry cabinet, to fixing the roof—without any specifics, which the record does not provide, the ALJ cannot rely on this fact to discredit Claimant because it provides very little, if any, insight into his daily functioning limitations. Additionally, as Claimant argues, there is no evidence that Claimant is able to consistently work on household projects for eight hours a day, five days a week, as would be necessary if he were employed. See *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'") (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

Regarding Claimant "looking for work," the ALJ again cites to psychotherapy treatment notes, stating that "he was looking for a job and was planning to sell things until he received a paycheck. (Exh. B6F)."[13] [Dkt. 17-2 at 40.] However, this job search occurred in 2017, prior to Claimant's onset date. In fact, after subsequently finding and accepting a job, Claimant was fired for not making productivity goals due to his OCD. See [Dkt. 17-9 at 347]. If anything, it appears

---

physical exertion that may have been used to justify the ALJ's decision, but that was ultimately not grounded in fact.

[13] Citing to exhibits in bulk—for example, ALJ MacDonald's bulk citation to Exhibit B6F, which contains 71 pages of medical documentation—is an unfortunately common practice among ALJs that hinders the Court's ability to follow the ALJ's reasoning. See *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

this evidence should support Claimant's claim for disability, not undercut it. The ALJ also bases his determination on the statement that "[t]he claimant was going to obtain his GED so that he could get a job. (Exh. B17F/1)." [Dkt. 17-2 at 41.] In reality, the therapy note cited to by the ALJ discusses how Claimant's **teenage son** "has been expelled from school. He is in need of a GED for the job he is to start following his birthday." [Dkt. 17-9 at 587.] This statement clearly does not pertain to Claimant, but to his son. Still, even if it were true that Claimant was looking for work, that would not be an appropriate reason to discredit his statements. See Roddy v. Astrue, 705 F.3d 631, 638 (7th Cir. 2013) ("The fact that [the claimant] pushed herself to work part-time and maintain some minimal level of financial stability, despite her pain, does not preclude her from establishing that she was disabled.") (citing Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 918 (7th Cir. 2003)); *see also* Goins v. Colvin, 764 F.3d 677, 679 (7th Cir. 2014) ("We have explained that 'even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.'") (citing Shauger v. Astrue, 675 F.3d 690, 697 (7th Cir. 2012)).

      Accordingly, ALJ MacDonald's determination that Claimant was not as limited as he claimed on the grounds that Claimant was able to perform "house projects" and because he "was looking for work" are factually inaccurate and therefore cannot suffice as the reason for discrediting Claimant's statements. See Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result"). Remand is necessary to fix these errors.

## V. Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  18 APR 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.